THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN 256535)
5100 Campus Dr. Suite 200
Newport Beach, CA 92660
Telephone:(949) 825-5200
Facsimile: (949) 313-5001
Email: cameron@sethatlaw.com

Attorneys for Plaintiff Pedro Hernandez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

PEDRO HERNANDEZ, individually,

  Plaintiff,

vs.

SAN BERNARDINO COUNTY, a governmental entity, DOES 1 through 10,

Defendants.

Case No.: 5:22-cv-01101

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1. **Deliberate Indifference to a Substantial Risk of Harm to Health & Safety - 42 U.S.C.§1983 - 14th Amendment**
2. **14th Amendment - State Created Danger**
3. **Supervisory Liability - 42 U.S.C.§1983**
4. ***Monell* Violation for Failure to Train - 42 U.S.C. §1983**
5. ***Monell* Violation for Unconstitutional Custom, Policy and Practice - 42 U.S.C.§1983**
6. **Negligence - Wrongful Death (State)**
7. ***Bane Act* C.C. 52.1 Et Seq. (State)**

**DEMAND FOR JURY TRIAL**

-1-

## **INTRODUCTION**

1.          This case challenges the deliberate indifference by San Bernardino Sheriff's deputies assigned to the West Valley Detention Center ("WVDC") to Plaintiff  Pedro Hernandez("HERNANDEZ") safety during consecutive preventable jail riot on April 17, 2021. HERNANDEZ was rendered physically incapacitated when he was severely injured as a result of his fall during the riot. This fall caused his C1 vertebrae to fracture, which led to HERNANDEZ losing 30% of his head rotation and suffer from spasms and swelling on the back of the head from a closed head injury. HERNANDEZwas diagnosed with a Jefferson Fracture at the hospital but was only given a Cervical Thoracic Orthosis brace to wear. Consequently, HERNANDEZ lived with daily pain for two months while his broken vertebrae went untreated, during which his injury interfered with his ability to function in daily life and take care of his personal and business affairs. As a result of the Jefferson fracture, HERNANDEZ had to be put in a liquid diet for two months because he was having difficulty and pain when swallowing and drinking water. In June, HERNANDEZ returned to the hospital reporting he could feel his cervical vertebrae "popping out of place" whenever he craned his neck forward and noted neck pain that was 10/10 in severity with numbness down his right lower extremity as a result C1 fracture. The worsening of the fracture required that HERNANDEZ undergo an emergency disc fusion surgery of his C1 and C2, after which he had to undergo a lengthy recovery process where his neck was immobilized with a brace during all hours of the day. He was also expected to undergo physical and occupational therapy at least three times a week to regain basic functions.

2.          HERNANDEZ's injury was preventable. If not for Defendants' failure to train, their maintenance of unconstitutional policies, practices, and customs, their failure to provide basic level medical care and their deliberate indifferenceto HERNANDEZ's health and safetycaused his injury and physical incapacity.

## JURISDICTION AND VENUE

3.      This action is filed under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983, to redress injuries and the death suffered by the plaintiffs' decedent at the hands of defendants.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (e) in that (1) the unlawful actions challenged herein occurred in the Central District; and (2) all of the parties reside in the Central District.

5.      The federal court of the Central District also has original jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343.  The federal court also has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(a).

6.      Jurisdiction and venue are proper in the Central District of California in that the acts of misconduct occurred within the Central District of California with such acts causing injury to HERNANDEZ.

7.      On or February 14, 2022 Plaintiff filed a California Tort Claim against the municipality, Defendant SAN BERNARDINO COUNTY ("COUNTY"). Plaintiffs Claim was rejected on March 2, 2022,therefore Plaintiff has exhausted all administrative responsibilities.

## PARTIES

8.      At all relevant times, HERNANDEZ was an individualresiding in the Fontana Valley, County of San Bernardino, California.

9.      Defendant COUNTY, at all relevant times herein mentioned was and is a business entity, of form unknown, having its principal place of business in the County of San Bernardino, State of California. The COUNTY purposely conducts substantial business activities in the State of California. COUNTY is a governmental entity that acts through individuals to establish itspolicies and that is capable of being sued under federal law. COUNTY, throughthe San Bernardino Sheriff's Department operates the WVDC, a County jail located in Rancho Cucamonga, California.

10.      Plaintiff is unaware of the true identities and capacities of defendant DOES1 through 10 but upon information and belief, said DOES are employees of the County, inclusive. Each of the fictitiously named defendants is in some manner and to some extent liable for the injuries alleged in this Complaint. Plaintiff will seek leave to amend this Complaint to allege the true identities and capacities of those fictitiously named defendants when they are determined.

11.      The true names or capacities of Defendants DOES 1 through 10 are unknown to Plaintiff atthis time who therefore sues said Defendants by fictitious names. Plaintiff alleges that in doing theacts and omissions herein alleged, said DOE Defendants were employed as employees, agents, or servants of the Defendant COUNTY, and at all times herein relevant were acting within the scope and course of their employment with the Defendant, COUNTY, and the acts and omissions of the said Defendants DOES 1 through 10 were the proximate cause of the injuries and losses suffered by Plaintiff.

12.      At all times mentioned herein, each Defendants were responsible in some manner orcapacity for the occurrences herein alleged. Plaintiff's damages, as herein alleged, wereproximately caused by all the acts and omissions of said Defendants. Defendants, COUNTY, and DOES 1-10 are sometimes collectively referred to herein as "Defendants"and/or as "All Defendants" and such collective reference refers to all specifically named Defendants.

13.      At all relevant times herein, Defendants were the agents, representatives and employeesof each other and every other Defendant. In doing the things herein alleged, Defendants wereacting under the color oflaw and within the course and scope of their duties of said alternativepersonality, capacity, identity, agency, representation and/or employment and were within thescope of their authority, whether actual or apparent.

14.      Plaintiff alleges that Defendants, COUNTY, and DOES 1-10,were the agents, contractors and/or employees of each and every other Defendant, and the actsand omissions herein alleged were done by them, acting individually,

through such capacity andwithin the scope of their authority, and with the permission and consent of each and every otherDefendant and that such conduct was thereafter ratified by each and every other Defendant, andthat each of them is jointly and severally liable to Plaintiff. As such, each Defendant in thisComplaint is legally responsible for the acts of the others.

15.     In committing the acts alleged in this complaint defendants acted knowingly, maliciously and with reckless or callous disregard for the constitutional rights of Plaintiff justifying an award of punitive damages under federal law against each individual defendant.

16.     Defendant COUNTY is responsible for funding the operations and maintenance of the Jails. This action concerns the administration of persons confined at the Jails, which houses adult male and female prisoners who are felons, gross misdemeanants, misdemeanants, pre-trial detainees, witnesses, or others being detained in protective custody.

17.     At all relevant times, Defendant or their predecessors in office have acted or failed toact, as alleged herein, under color of state law.

18.     The Jails are an institution within the meaning of 42 U.S.C. § 1997(1).

19.     Persons confined to the Jails include both pre-trial detainees and sentenced prisoners.

20.     Defendant has repeatedly and consistently disregarded known or serious risks of harmto prisoners at the Jails.

21.     Defendant has maintained a physical environment at the Jails, including WVDC, that causes harm and poses an unreasonable, and known, risk of serious harm to prisoners' health and safety by failing to correct facility housing and maintenance problems in addition to inadequate housekeeping and sanitation that causes harm or poses a risk of harm to the prisoners and Staff within the facility

22.      Plaintiff was deprived of his interests protected by the Constitution or laws of the United States, and defendants caused all such deprivations while acting under color of state law.

23.      All acts or omissions alleged to have been engaged in by any individual defendants were committed with evil motive and intent, and in callous, reckless, and wanton disregard to the individual rights of Plaintiff.

**FACTUAL ALLEGATIONS**

24.      Plaintiff incorporates all prior paragraphs and page allegations as the though fully set forth herein, including all exhibits.

25.      HERNANDEZ was arrested and charged with felony charges for violation of his probation in San Bernardino County on or around February 21, 2021.

26.      Following his arrest, HERNANDEZ was placed in Defendant's West Valley Detention Center jail.

27.       While detained at WVDC, HERNANDEZ was severely injured as a result of injuring his neck during a preventable jail riot. On April 17, 2021, Plaintiff was asleep when he was awoken by the commotion of what appeared to be the second consecutive racial riot in a few months. HERNANDEZ exited his pod, was caught in the commotion of the riot, and his head and neck got stomped, effectively fracturing his C1 vertebrae. This caused HERNANDEZ to lose losing 30% of his head rotation and suffer from spasms and swelling on the back of the head from his closed-head and neck injury. After being examined at the Arrowhead Regional Medical Center ("ARMC"), Mr. Hernandez was diagnosed with an unstable Jefferson fracture, and was only given a cervical thoracic orthosis ("CTO") brace to wear. Consequently, Mr. Hernandez lived with daily pain for two months while his broken vertebrae went untreated.

28.      However, while incarcerated, Mr. Hernandez reported suffering from a sneezing episode in May 2021, during which he heard a "popping" noise, which was which was followed by numbness radiating down his arm. Despite seeking

assistance at the ARMC, he was once again not given additional treatment and was prescribed more pain killers and to keep his C-collar on.

29.    During the two months that Mr. Hernandez's fracture went untreated, his injury interfered with his ability to function in daily life and take care of his person and business affairs. As a result of the Jefferson fracture, Mr. Hernandez had to be on a liquid diet for two months because he was having difficulty and pain when swallowing and drinking water.

30.    Following this visit, Mr. Hernandez returned to the hospital just a month later on or around June 2021, when he reported he could feel his cervical vertebrae "popping out of place" whenever he craned his neck forward and noted neck pain that was 10/10 in severity with numbness down his right lower extremity as a result of his worsening C1 fracture.

31.    It was during this visit in June that doctors realized that his Jefferson fracture had worsened and that he required an emergency disc fusion of his C1 and C2. Spine fusion surgeries have a lengthy rehabilitation period and require the patient to avoid certain basic movements to prevent the stress at the fused segments. Patients are limited to wearing C-collar restraints and discouraged from bending forward and backward and twisting their upper body to the sides in the initial weeks. They are later subjected to a significant period of physical therapy to strengthen their muscles.

32.    Following his fusion, Mr. Hernandez had to undergo a lengthy recovery process where his neck was immobilized with a C-collar during all hours of the day. He was expected to undergo physical and occupational therapy at least three times a week to regain basic functions. Mr. Hernandez had to relearn how to navigate basic tasks of everyday life after his fracture and vertebrae fusion. Mr. Hernandez had to undergo numerous treatments, including undergoing therapy for feeding/ eating, swallowing, dressing and grooming/personal hygiene. Mr. Hernandez also had to receive safety training, therapeutic exercises, pain management and activity tolerance training.

33.      HERNANDEZ's fracture and fusion substantially interfered with his ability to function in daily life. Despite all of this therapy and surgery, Mr. Hernandez could no longer move his neck the same way he used to. He noted during a doctor's appointment on August 6, 2021, following his release from prison, that his neck pain had increased to intermittent 9/10 sharp pains with numbness to the posterior of his scalp. He was also only able to take off his C-collar brace to shower. Following his release from prison, Mr. Hernandez's days were spent mostly in pain and his focus was directed towards his physical and occupational therapy to allow him to regain his basic functions.

34.      Following the first racial riot, Defendants DOES 1-10, were in charge of the safety of the Plaintiff's housing unit. Upon being alerted of the first of two consecutive race riot, DOES 1-10 failed to separate racially diverse inmates and instead ignored the rising tensions indicating that another riot was to break out immediately. As a result, DOES 1-10 were deliberately indifferent to Plaintiff's safety and the inmates in the cell pod, which subsequently led to Mr. Hernandez's injuries caused during the second riot.

## FIRST CLAIM FOR RELIEF

**DELIBERATE INDIFFERENCE TO A SUBSTANTIAL RISK OF HARMTO HEALTH & SAFETY-42 U.S.C. § 1983, 14th Amendment of the U.S. Constitution (Against All Defendants, and DOES 1-10 )**

35.      Plaintiff repeats and re-allege each and every allegation in paragraphs 1through 34 of this Complaint with the same force and effect as if fully set forth herein.

36.      Plaintiff brings their deliberate indifference claim under the standards articulated in *Gordon v. Cty. of Orange*, 888 F.3d 1118 (9th Cir. 2018) and *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

37.      From the time Plaintiff was booked at the WVDC until the time of the second racial riot, the Defendants and DOES 1-10 denied HERNANDEZ the

right to be protected against other inmates and the right to be safeguarded from other inmates in violation of his 14th Amendment constitutional rights.

38.     All Defendants, including DOES 1-10 were on notice that without separating the racially diverse inmates involved in the first riot, another racial riot was on the verge of breaking out.

39.     All of the Defendants, including DOES 1-10,  knew there was a substantial risk to HERNANDEZ's safety if he remained in the cell and was not removed to another Cell Pod that did not have a previous racial riot, but repeatedly denied him safe placement in the jail.

40.     Defendants DOES 1-10 made an intentional decision with respect to the conditions under which HERNANDEZ was attacked. To wit, defendants deliberately ignored the signs following the first racial riot and failed to separate the racially diverse inmates to avoid another riot. Specifically, DOES 1-10 Defendant failed to separate and reprimand the perpetrators during the first riot resulting in a second inevitable riot.

41.     Those decisions placed HERNANDEZ at a substantial risk of danger, and risk of suffering severe harm because every Defendant was unequivocally informed that another racial riot would happen soon, and later knew that one was in progress.

42.     Defendants DOES 1-10 did not take reasonable available measures to abate those risks, even though reasonable officials in the circumstances would have appreciated the high degree of risk involved-making the consequences of the defendants' conduct obvious.

43.     By not taking such measures, the defendants DOES 1-10 caused HERNANDEZ's injuries.

44.     It was objectively unreasonable for the Defendants to ignore the numerous objective signs and symptoms of a serious safety crisis.

45.     Defendants DOES 1-10, by ignoring the signs of an upcoming racial riot and by failing to safeguard and prevent an imminent racial riot, acted with deliberate indifference to the serious risk of harm to HERNANDEZ's safety.

46.     Accordingly, Defendants each are liable to Plaintiffs for compensatory, including pain and suffering, past and future medical expenses, loss of earnings and earning capacity, and punitive damages under 42 U.S.C. § 1983 and the 14th Amendment, as well as for wrongful death damages.

## SECOND CLAIM FOR RELIEF
### 14th AMENDMENT-STATE CREATED DANGER
### (Against All Defendants, and DOES 1-10)

47.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-46 of this Complaint with the same force and effect as if fully set forth herein.

48.     Under the Fourteenth Amendment, HERNANDEZ had the constitutional right to be free from defendants' affirmative action of placing him in a position of actual, particularized danger. In this case, defendants knew that a second racially motivated riot was planned to take place soon. These other 10 inmates who were involved in the racial riot were made up of three Black inmates plus one Asian inmate, while the other 6 inmates were Hispanic, within jail politics, is a red flag given that HERNANDEZ is of Hispanic origin and given the historical animosity between these two races within the jail system.As the inmates started the second racial riot, Defendants did not immediately step in to protect Mr. Hernandez,or detain the violent inmates participating in the riot.

49.     While at the jail, Mr. HERNANDEZ was in Defendants' care and custody, and as such, Defendants had an affirmative duty not to expose Mr. HERNANDEZ to more danger than he would have been prior to his incarceration.

50.     By blatantly denying Mr. HERNANDEZ any help during the attack by the ten inmates, Defendants made an affirmative decision which consequently led to the assault.

51.     By blatantly ignoring Hernandez's complaintsregarding the signs of another upcoming racial riot andfailing to separate the racially diverse inmates who were a part of the initial riot, Defendants made an affirmative decision which consequently led to the *second* racial riot.

52.     By ignoring Mr. Hernandez in this situation, Defendants acted with deliberate indifference to Mr. Hernandez'ssafety.

53.     Defendants' affirmative acts created a foreseeable risk that Mr. Hernandez would be in grave danger withoutDefendants' assistance and protection.

54. Accordingly, Defendants each are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983 and the 14th Amendment.

**THIRD CLAIM FOR RELIEF**

**SUPERVISORY LIABILITY - (42 U.S.C. § 1983)**

**(Against DOE Defendants 1-10)**

55.     Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1-54 of this Complaint with the same force and effect as if fully set forth herein.

56.     At all times relevant to this complaint, DOES 1 through 10 were acting under color of state law as a correctional deputy, and as the ranking supervisor to DOES 1 through 10.

57.     Defendant DOES 1 through 10 failed to directother WVDC correctional deputies to immediately separate the racially diverse inmates who were involved in the initial racial riot. DOES 1 through 10 also failed to direct WVDC correctional deputies to immediately step in to protect HERNANDEZ and the uninvolved detainees, or gain control over the other inmates.

58.     As a direct and legal result of DOES 1 through 10's acts, Plaintiff has suffered damages, including, without limitation, past and future pain and suffering, and compensatory damages.  Such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## **FOURTH CLAIM FOR RELIEF**

### *MONELL*- **FAILURE TO TRAIN (42 U.S.C. §1983)**

### **(Against Defendant COUNTY and DOES 1-10)**

59.     Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1-58 of this Complaint with the same force and effect as if fully set forth herein.

60.     Defendant COUNTY knew that a second racial riot was imminent as a result of not moving the racially diverse inmates after the first riot. Given the known limitations of the County jail, it was obvious that County jail detention staff, including the individual defendants would need special training in order to seriously address threats of violence among detainees, and ensure that inmates were not housed with other racially diverse detainees following the first racial riot.

61.     Defendants and DOES 1-10 had not been trained in the proper assessment of reported threats of an upcoming racial riot, and the proper assessment to provide appropriate housing placement to the involved inmates. This failure totrain led to a complete failure of care to HERNANDEZ, ultimately resulting in hisinjuries.

62.     On and for some time prior to February 21, 2021 (and continuing to the present date), Defendant County of San Bernardino deprived Mr. Hernandez of the rights and liberties secured to him by the  Fourteenth Amendmentto the United States Constitution, in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the safety, rights, and liberties of the public in general, and of Plaintiff, and of persons in their class, situation and comparable position, in particular, knowingly maintained, enforced and applied an official custom, policy, and practice of:

a. Failing to adequately train its correctional deputies in the assessment, documentation, and reporting of potential violent threats of attack amongst inmates;

b. Failing to adequately train its correctional deputies in identifying a person or group of people that present a threat of force or violence;

c. Failing to adequately investigate the background, training and experience of correctional deputies and their propensity to support and facilitate violence;

d. Failing to provide adequate supervisory control over the actions of its deputies in regards to adequate training, supervision, equipment, planning, oversight, and administration;

e. Failing to control the conduct of its deputies who have a known propensity of supporting and facilitating violence;

f. Failing to investigate in good faith, allegations of deputies supporting and facilitating violence used by inmates against other fellow inmates;

g. Failing to discipline its deputies who support and facilitate violence by inmates against other fellow inmates;

h. Sanctioning, condoning, and approving a correctional deputy-wide custom and practice of a code of silence, cover-up and dishonesty.

i. Inadequately supervising, training, controlling, assigning, and disciplining employees including WVDC Jail staff;

j. Routinely neglecting and ignoring threats of violence against detainees and enabling the custom and practice of housing homicidal and violent detainees with others;

k. Engaging in the custom and practice of withholding or delaying urgent housing transfers;

l. Failing to implement appropriate multi-disciplinary treatment plans;

m. Failing to implement adequate critical incident review processes;

n.  Repeatedly delaying the rendering of healthcare to detainees suffering a medical crisis;

o.   Ignoring and/or failing to reasonably monitor, to provide security, and to prevent inmates from committing harm to others;

63.     Defendant, County of San Bernardino, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, this Defendant condoned, tolerated and through actions and inactions thereby ratified such policies. Such Defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the Constitutional rights of Plaintiff, and other individuals similarly situated.

64.     By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, County of San Bernardino acted willfully, oppressively, maliciously, fraudulently, and with extreme offense-unconscionable to any person of normal sensibilities.

65.     By reason of the aforementioned policies and practices of Defendant County of San Bernardino, Mr. Hernandez suffered serious injuries and other harm.

66.     These policies, practices, and customs implemented and maintained, and still are tolerated by County of San Bernardino, were affirmatively linked to and were significantly influential force behind the injuries of Mr. Hernandez.

67.     The conduct of County of San Bernardino was malicious, wanton, oppressive, and accomplished with a conscious disregard for Mr. Hernandez's rights, entitling him to an award for exemplary and punitive damages.As a direct and legal result of Defendants' acts, Mr. Hernandez has suffered damages, including, without limitation, past and future pain and suffering, and compensatory damages.  Such damages include attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

**FIFTH CLAIM FOR RELIEF**

*MONELL*- UNCONSTITUTIONAL CUSTOM, POLICY

OR PRACTICE (42 U.S.C. §1983)

(Against Defendant COUNTY and DOES 1-10)

68.     Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1-67 of this Complaint with the same force and effect as if fully set forth herein.

69.     At all times herein mentioned the Defendants, COUNTY and DOES 1 through 10, were employees of the County of San Bernardino, acting under the direction and control of Defendant County. Defendant County knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments to the United States Constitution. These customs, policies, practices and usages required and encouraged the employment, deployment and retention of persons, as correctional deputies, who have a propensity for violence, excessive force, dishonesty, and additional abuses of their duties as correctional deputies in the employment of the County of Riverside.

70.     Defendant County knowingly maintained or permitted an official policy or custom of permitting the occurrences of the types of wrongs alleged herein by, among other things, failing and refusing to meaningfully investigate or discipline correctional deputies known to have repeatedly violated the constitutional rights of the public.

71.     Additionally, Defendant County has displayed deliberate indifference to the rights of citizens and, based upon the principles set forth *in Monell v. New York City Department of Social Service*s, 436 U.S. 658 (1978), is liable for all injuries sustained by Plaintiff as set forth herein.

72.       Defendant County bears liability because its policies, practices and/or customs were a cause of Plaintiff's injuries. Defendant County and its officials maintained or permitted a policy, practice and custom of permitting, encouraging and ratifying the use of unnecessary and unreasonable force, and acting with reckless indifference to the Constitutional rights of members of the public by its correctional deputies by, among other things:

    (a)  Failing to implement policies and procedures on assessment of threats of violence against detainees and adequate assessments of detainees who are a danger to themselves and others;

    (b)  Failing to adequately train its correctional deputies in the assessment, documentation, and reporting of potential violent threats of attack amongst inmates;

    (c)  Failing to adequately train its correctional deputies in identifying a person or group of people that present a threat of force or violence;

    (d)  Failing to adequately investigate the background, training and experience of correctional deputies and their propensity to support and facilitate violence;

    (e)  Failing to provide adequate supervisory control over the actions of its deputies in regards to adequate training, supervision, equipment, planning, oversight, and administration;

    (f)  Failing to control the conduct of its deputies who have a known propensity of supporting and facilitating violence;

    (g)  Failing to investigate in good faith, allegations of deputies supporting and facilitating violence used by inmates against other fellow inmates;

    (h)  Failing to discipline its deputies who support and facilitate violence by inmates against other fellow inmates;

    (i)  Sanctioning, condoning, and approving a correctional deputy-wide custom and practice of a code of silence, cover-up and dishonesty.

    (j)  Inadequately supervising, training, controlling, assigning, and disciplining employees including WVDC Jail staff;

(k) Routinely neglecting and ignoring threats of violence against detaineesand enabling the custom and practice of housing homicidal and violent detainees with others;

(l) Engaging in the custom and practice of withholding or delaying urgent housing transfers;

(m) Failing to implement appropriate multi-disciplinary treatment plans;

(n) Failing to implement adequate critical incident review processes;

(o) Repeatedly delaying the rendering of healthcare to detainees suffering a medical crisis;

(q) Ignoring and/or failing to reasonably monitor, to provide security, and to prevent inmates from committing harm to others

73.     The actions and inactions of the COUNTY set forth in the preceding paragraphswere known or should have been known to the policy makers responsible for theDefendant COUNTY and occurred with deliberate indifference to either therecurring constitutional violations elaborated above, and/or to the stronglikelihood that constitutional rights would be violated as a result of failing to train,supervise or discipline in areas where the need for such training was obvious.

74.     The actions and omissions of Defendant COUNTY set forthin the preceding paragraphs were a motivating force behind the violations ofHERNANDEZ's constitutional rights as set forth in this complaint.

75.     By reason of the aforementioned policies and practices of Defendants and COUNTY, Plaintiff suffered debilitating physical injuries, and which action constituted a clear deprivation of his constitutional rights.

76.     Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these

policies with respect to the constitutional rights of HERNANDEZ and other individuals similarly situated.

77.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY, acted with an intentional, reckless, and callous disregard for the well-being of Plaintiff and his constitutional as well as human rights.

78.     Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants COUNTY were affirmatively linked to and were a significantly influential force behind Plaintiff's injuries.

79.     As a direct and legal result of Defendants' acts and omissions, Mr. HERNANDEZ has suffered damages, including, without limitation, past and future pain and suffering, and compensatory damages. Such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiff for compensatory and punitive damages under 42 U.S.C. § 1983.

## SIXTH CLAIM FOR RELIEF
### NEGLIGENCE
### (Against All Defendants and DOES 1-10)

80.     Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1-79 of this Complaint with the same force and effect as if fully set forth herein.

81.     Defendants DOES 1-10 owed a duty of care toward Mr. Hernandez and were required to use reasonable diligence to ensure that Mr. Hernandez was not harmed by Defendants' acts or omissions. Defendants' actions and omissions were negligent and reckless, including but not limited to:

a. The negligent treatment of Mr. Hernandez, by allowing him to sustain serious injuries during the riot;

b. The negligent failure to secure and promptly gain control over the inmates;

     c.   The negligent failure to separate racially diverse inmates after the first initial riot;

     d.   The negligent failure to promptly remove the inmates from Plaintiff'svicinity once he slipped;

     e.   The negligent hiring, retention and assignment of its employees, including DOES 1 through 10;

     f.   The failure to properly train, supervise, and discipline employees,including DOES 1 through 10.

82.     As a direct and legal result of their conduct, DOE Defendants are liable for Plaintiff's damages, either because they were integral participants in the negligence, or because they failed to intervene to prevent these violations.

83.     DOES 1-10's negligence was a substantial factor in causing harm to Mr. Edwards.

84.     DOE Defendants were employees of Defendant County of San Bernardino.

85.     DOE Defendants were acting within the scope of their employment when they failed to protect Mr. Hernandez

86.     As a result of DOE Defendants' conduct, Defendant County of San Bernardino is vicariously liable for Mr. Hernandez's injuries, including, without limitation, medical expenses, loss of earnings, and the past and future pain and suffering all to his general and special damages according to proof, including Attorney's fees, costs of suit, and other pecuniary losses not yet ascertained.

## SEVENTH CLAIM FOR RELIEF
### BANE ACT CAL. CIVIL CODE 52.1 et seq.
### (Against All Defendants and DOES 1-10)

87.     Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs1-86 of this Complaint with the same force and effect as if fully set forth herein.

88.     Defendants showed a specific intent to violate HERNANDEZ's constitutional rights, through their reckless disregard for HERNANDEZ's constitutional rights.

89.     Defendants acted with reckless disregard in failing to secure the cell pod and separate racially diverse inmates after the first initial race riot. Defendants acted with reckless disregard by continuing to house these inmates together. Further, Defendants acted with a reckless disregard in failing to immediately gain control of the situation and secure the inmates before HERNANDEZ or anyone else got hurt during the riot.

90.     When Defendants committed the above acts, they interfered with HERNANDEZ's civilrights to be free from unreasonable searches and seizures, to due process, to equalprotection of the laws, to medical care, to be free from state actions that shock theconscience, and to life, liberty, and property.

91.     Defendants knowingly deprived HERNANDEZ of his constitutional rights through acts which were inherently coercive, intimidating, and threatening,by housing HERNANDEZ in an inappropriate cell, by failing to take threats of racial riots seriously, and by failing to immediately separate racially diverse inmates after the first initial riot.

92.     Defendants successfully interfered with the above civil rights of Plaintiff.

93.     The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

94.     COUNTY is vicariously liable for the wrongful acts of the deputy, sergeant, and sheriff defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

95.     Defendants DOES 1-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

96.     The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for HERNANDEZ's rights, justifying an award of exemplary and punitive damages as to the defendants and attorneys' fees under this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in their favor and against all Defendants, and DOES 10 through 50 inclusive, as follows:

1.     For compensatory damages including special, past and future medical expenses, loss of earning and earning capacity and general damages in an amount to be proven at trial;

2.     For punitive damages against the individual defendants in an amount to be proven at trial;

3.     For interest;

4.     For reasonable costs of this suit and attorneys' fees per 42 U.S.C. §1988 and C.C. 52.1 et seq.; and

5.     For such further other relief as the Court may deem just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Date: September 26, 2022                    THE SEHAT LAW FIRM, PLC

                                            By: /s/ Cameron Sehat
                                            Cameron Sehat, Esq.
                                            Attorneys for Plaintiff