UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1101 JGB (SPx)** | Date | January 26, 2023 |
|---|---|---|---|
| Title | *Pedro Hernandez v. San Bernardino County, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 17); and (2) VACATING the January 30, 2023 Hearing (IN CHAMBERS)

  Before the Court is a motion to dismiss filed by Defendant County of San Bernardino, ("Defendant" or "the County"). ("Motion," Dkt. No. 17.) The Court determines this matter is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **GRANTS** the County's Motion. The January 30, 2023 hearing is **VACATED**.

## I.   BACKGROUND

  On July 1, 2022, Plaintiff Pedro Hernandez ("Plaintiff" or "Mr. Hernandez") filed a complaint against the County and Does 1-10 (collectively, "Doe Defendants"). ("Complaint, Dkt. No. 1.) On July 2, 2022, the parties stipulated to extend the time for Defendant to answer the Complaint. (Dkt. No. 8.) On August 26, 2022, the parties stipulated to allow Plaintiff to file a first amended complaint and extend the time for Defendant to answer the first amended complaint. (Dkt. No. 11.) On September 1, 2022, the Court approved the stipulation and ordered Plaintiff to file a first amended complaint by September 26, 2022. (Dkt. No. 13.) On September 26, 2022, Plaintiff filed a first amended complaint against the County and Does 1-10. ("FAC," Dkt. No. 15.) The FAC alleges seven causes of action, with each claim for relief asserted against both the County and the Doe Defendants except for the third, which is just brought against the Doe Defendants: (1) deliberate indifference to a substantial risk of harm to health and safety pursuant to 42 U.S.C. § 1983 – Fourteenth Amendment; (2) Fourteenth Amendment state-created danger pursuant to Section 1983; (3) supervisory liability pursuant to Section 1983; (4) a Monell claim for failure to train; (5) a Monell claim for unconstitutional

custom, policy and practice; (6) negligence[1]; and (7) violation of the Bane Act, Cal. Civ. Code § 52.1 et seq.  (See FAC.)

On October 25, 2022, the parties filed a stipulation to (1) dismiss any claim for wrongful death damages; (2) dismiss the County as a defendant in the first and second causes of action; and (3) dismiss any claim against the County for punitive damages.  (Dkt. No. 16.)  On October 27, 2022, the Court approved the stipulation.  (Dkt. No. 19.)

On October 26, 2022, Defendant filed the Motion.  (Motion.)  On January 3, 2023, Plaintiff opposed.  ("Opposition," Dkt. No. 20.)  On January 9, 2023, Defendant replied.  ("Reply," Dkt. No. 21.)

## II.   FACTUAL ALLEGATONS

Mr. Hernandez alleges the following facts, which are assumed to be true for the purposes of this Motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

Mr. Hernandez was arrested and charged with felonies for violation of his probation in San Bernardino County on or around February 21, 2021.  (FAC ¶ 25.)  Following his arrest, Plaintiff was placed in the County's West Valley Detention Center ("WVDC").  (Id. ¶ 26.)  While detained at WVDC, Mr. Hernandez's neck was severely injured during a preventable jail riot on April 17, 2021.  (Id. ¶ 27.)  On that date, Plaintiff "was asleep when he was awoken by the commotion of what appeared to be the second consecutive racial riot in a few months."  (Id.)  Mr. Hernandez "exited his pod, was caught in the commotion of the riot, and his head and neck got stomped, effectively fracturing his C1 vertebrae."  (Id.)  This caused him to lose 30% of his head rotation and suffer from spasms and swelling on the back of his head.  (Id.)  He was diagnosed at the Arrowhead Regional Medical Center ("ARMC") with an unstable Jefferson fracture and was only given a cervical thoracic orthosis ("CTO") brace to wear.  (Id.)  He "lived with daily pain for two months while his broken vertebrae went untreated."  (Id.)  While incarcerated, he heard a "popping" noise during a sneezing episode in May 2021, which was followed by numbness in his arm.  (Id. ¶ 28.)  When he returned to ARMC for treatment, he was not given additional treatment, but merely prescribed more painkillers and told to keep the C-collar on.  (Id.)  He suffered for two months without treatment, while his injury interfered with his ability to function in daily life.  (Id. ¶ 29.)  He returned to the hospital in June 2021, when he reported he could feel his cervical vertebrae "popping out of place" when he craned his neck forward.  (Id. ¶ 30.)  During this hospital visit, doctors realized that his Jefferson fracture had worsened and that he required an emergency disc fusion.  (Id. ¶ 31.)  Following his fusion, he had

---

[1] The Court observes that on the caption page of both the Complaint and the FAC, this claim is titled "negligence – wrongful death (state)," though there are no allegations that anybody died.  Later on in the pleadings, Plaintiff merely alleges "negligence."  (See Complaint; FAC.)  There are numerous other indications of poor copy and paste work and sloppy "shotgun" pleading in both the Complaint and FAC.

to undergo a lengthy rehabilitation process that interfered with his ability to function in daily life. (Id. ¶¶ 32-33.)  Following his release from custody, he spent his days mostly in pain.  (Id. ¶ 33.)[2]

"Following the first racial riot, Defendants DOES 1-10, were in charge of the safety of the Plaintiff's housing unit.  Upon being alerted of the first of two consecutive race riot[s], DOES 1-10 failed to separate racially diverse inmates and instead ignored the rising tensions indicating that another riot was to break out immediately.  As a result, DOES 1-10 were deliberately indifferent to Plaintiff's safety and the inmates in the cell pod, which subsequently led to Mr. Hernandez's injuries caused during the second riot."  (Id. ¶ 34.)

"The true names or capacities of Defendants DOES 1 through 10 are unknown to Plaintiff at this time who therefore sues said Defendants by fictitious names.  Plaintiff alleges that in doing the acts and omissions herein alleged, said DOE Defendants were employed as employees, agents, or servants of the Defendant COUNTY, and at all times herein relevant were acting within the scope and course of their employment with the Defendant, COUNTY, and the acts and omissions of the said Defendants DOES 1 through 10 were the proximate cause of the injuries and losses suffered by Plaintiff."  (Id. ¶ 11.)

### III.   LEGAL STANDARD

**A.  Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

---

[2] The Court observes that, despite these extensive allegations concerning seemingly inadequate medical care, they do not form the basis of any of Plaintiff's causes of action.  Rather, Plaintiff's legal claims appear to center on the actions and inactions of sheriff's deputies before, during, and after the second race riot.  (See FAC.)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### C. Rule 15

Federal Rule of Civil Procedure 15 ("Rule 15") provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).

### IV.   DISCUSSION

### A. Doe Defendants

Defendant moves to dismiss all Doe Defendants from the FAC. (Motion at 5.) Defendant observes that Plaintiff fails to allege how any individual Doe Defendant personally participated in the violation of his rights. (Id. at 6.) Moreover, Plaintiff names Doe Defendants 1-10 in all seven claims, even though the third claim is only for supervisory liability and the fourth and fifth causes of action are for municipal liability under Monell. (Id.) Plaintiff responds to these arguments by 1) citing Wakefield v. Thompson, 177 F.3d 1160 (9th Cir. 1999) without applying it to the instant case; 2) repeating various allegations in the FAC; and (3) concluding in a single sentence that "the FAC pleads enough specific [sic] to place Doe Defendants on notice of the specific conduct at issue." (See Opposition at 9-10.) The Court agrees with Defendant that Plaintiff's blanket pleading of the actions of Doe Defendants without any attempt to differentiate them is improper.

Wakefield held the following:

> In [Gillespie v. Civiletti, 629 F.2d 637, 162 (9th Cir. 1980)] we stated in dicta . . . that "as a general rule, the use of 'John Doe' to identify a defendant is not favored." Id. at 642. Our holding in Gillespie, however, was different. We held that in circumstances, such as those before us today, "where the identity of the alleged defendant is not known prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Id. We concluded in Gillespie that the district court's dismissal of the complaint against the John Doe defendant was error. See id. at 643. The case before us is indistinguishable. Far from supporting the district court's action, Gillespie demonstrates that the district court erred in dismissing Wakefield's complaint against Doe simply because Wakefield was not aware of Doe's identity at the time he filed his complaint.

177 F.3d at 1163 (brackets omitted). Properly understood, Wakefield establishes a plaintiff's general right to allege the conduct of unknown Doe Defendants until discovery may reveal their identities. But Wakefield's rule does not tolerate the extraordinarily broad pleading Plaintiff engages in here, in which he brings all but one cause of action against the same group of people without so much as a hint that Doe 1 might differ from Doe 2, and so forth. "A Section 1983 action must allege how each individual defendant directly participated in the violation of the plaintiff's rights." Cavanaugh v. Cnty. of San Diego, 2020 WL 6703592, at *25 (S.D. Cal. Nov. 12, 2020); see also Higgins v. Hutchens, 2015 WL 13917224, at *2 (C.D. Cal. Aug. 27, 2015) ("An individual defendant is not liable on a Section 1983 civil rights claim unless s/he was personally involved in the alleged constitutional deprivation."). A plaintiff "may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." Keavney v. Cnty. of San Diego, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020). Doe allegations "provide crucial notice of the nature of the claims" to defendants; the lack of clarity identified above regarding the allegations against the Doe Defendants and the County make it difficult to assess them. Mendoza v. Cnty. of San Bernardino, 2020 WL 2066142, at *4 (C.D. Cal. Feb. 21, 2020). "Even as to Doe defendants, a plaintiff must allege sufficient facts to state a claim to survive dismissal on the pleadings." Lak v. Cal. Dep't of Child Support Servs., 2017 U.S. Dist. LEXIS 183675, at *1 n. 1 (C.D. Cal. Nov. 3, 2017) (internal quotations and alterations omitted); see also Fisher v. Kealoha, 869 F. Supp. 2d 1203, 1214 (D. Haw. 2012) (dismissing all Doe Defendants where plaintiff "provided no information as to the basis for [his] claims against them[,]" "[o]ther than naming the Doe Defendants in the caption of his Complaint").

Even construing the pleadings in the light most favorable to Plaintiff, the Court finds that the FAC does not sufficiently allege how any of the Doe Defendants were personally involved.

To begin, the FAC does not ever explicitly define what role or title any of the Doe Defendants held, although the Court infers from various paragraphs that they are sheriff's deputies. (See FAC ¶ 1.) The obvious place to define their role(s) would be in the section entitled "parties," but the closest Plaintiff comes to doing so is referring to them as "employees" of the County. (See id. ¶¶ 8-23.) Because the third cause of action is for "supervisory liability," one would presume that Plaintiff alleges conduct by supervisors separate from the individuals they supervise. But the FAC alleges that Does 1-10 "failed to direct other WVDC correctional deputies to immediately separate the racially diverse inmates who were involved in the initial racial riot. Does 1 through 10 also failed to direct WVDC correctional deputies to immediately step in to protect HERNANDEZ and the uninvolved detainees, or gain control over the other inmates." (FAC ¶ 57.) If all 10 Doe Defendants are supervisors, then who are the other correctional deputies? More importantly, what did any of these individuals allegedly do (or fail to do) and when did they do it (or fail to do it)? The Court understands that Plaintiff is operating at an information deficit without discovery and may not be able to precisely establish the conduct of each individual deputy during the events in question. But he must at least attempt to "refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on . . . [and] allege specific facts showing how each particular doe defendant violated his rights." Keavney, 2020 WL 4192286, at *4.

Accordingly, the Court DISMISSES the Doe Defendants from the first, third, sixth and seventh causes of action WITH LEAVE TO AMEND; as noted below, the Doe Defendants are dismissed from the second, fourth and fifth causes of action WITHOUT LEAVE TO AMEND. See Lopez, 203 F.3d at 1127.

### B. Second Cause of Action: State-Created Danger

Defendant argues that Plaintiff fails to state a claim for relief in his second cause of action, as a "state-created danger" requires an affirmative act of placing him in a position of danger, not mere inaction in failing to protect him from harm. (Motion at 6-7.) Defendant also argues that Plaintiff's second cause of action is duplicative of the first and should be dismissed on that basis. (Id. at 7-8.) Plaintiff does not respond to the latter argument in the Opposition. (See Opposition at 7.)[3] The Court finds it waived. See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue." (citation and quotations omitted); Resnick v. Hyundai Motor Am., Inc., 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument raised in a motion to dismiss constitutes waiver of that argument."). Even if Plaintiff had not waived the argument, the Court would agree with Defendant that it involves virtually identical factual allegations to the first cause of action and is thus duplicative. In both claims, Plaintiff alleges, in sum, that Defendants (1) knew (or had sufficient notice) that a second

---

[3] While failing to address the substance of the argument, Plaintiff acknowledges that "Defendants have filed a motion to dismiss the first amended complaint . . . arguing . . . a state created danger claims is duplicative of the deliberate indifference claim." (Opposition at 6.)

race riot was likely or imminent; (2) failed to protect Plaintiff from the riot; and (3) in doing so, acted with deliberate indifference to his safety. (See FAC ¶¶ 35-54.) Because it is duplicative of the first cause of action, the Court dismisses the second cause of action WITHOUT LEAVE TO AMEND.[4] See Swartz v.KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) (finding district court's dismissal of "duplicative" claim proper).

### C. Third Cause of Action: Supervisory Liability

Defendant argues, among other things, that Plaintiff fails to allege with requisite specificity the conduct of the Doe Defendant supervisors. (Motion at 8.) The sole substantive allegations regarding the conduct of the Doe supervisors are the two sentences the Court quoted above. (See FAC ¶ 57.) The Court reiterates its observation that Plaintiff brings this cause of action against ten Doe Defendants, which is improper if he actually asserts that only a few individuals were acting in a supervisory capacity. (See id.)

In a Section 1983 action like this one, "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Hansen v. Black, 885 F.2d 642, 645-646 (9th Cir. 1989). "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Id. at 646. Supervisory liability may attach where a plaintiff alleges facts demonstrating the supervisor's "own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." Starr, 652 F.3d at 1205–06 (internal citations, quotation marks, and alterations omitted). Plaintiff fails to allege, in anything other than conclusory terms, *how* the Doe supervisors "failed" in their responsibility to "separate the racially diverse inmates" and "step in to protect" Plaintiff. (See FAC ¶ 57.) Conclusory allegations like those in the FAC's third cause of action fail to "identify what action each Defendant took that caused the plaintiff's harm, without resort[ing] to generalized allegations against Defendants as a whole." Rendon v. Cnty. of Orange, 2020 WL 974940, at *3 (C.D. Cal. Jan. 3, 2020). Indeed, with respect to any Doe supervisor, Plaintiff does not allege "what role each Defendant played in the alleged harm, [which] makes it exceedingly difficult, if not impossible, for [Doe supervisors] to respond" to Plaintiff's allegations. Id. (internal quotations and citation omitted). Did any of the supervisors know about the initial riot and its allegedly racial causes? Were they the ones who made the decision not to separate the "racially diverse inmates" from each other? Were the supervisors present during the (second) riot? If so, should those supervisors have personally intervened in the melee to protect Plaintiff? If the supervisors were not physically present, did they know about the riot and choose not to instruct their subordinates to intervene at all? Did

---

[4] As an additional basis for dismissing the second cause of action, the Court agrees with Defendant that Plaintiff fails to allege a state-created danger in the FAC, which requires some kind of affirmative conduct, not a mere failure to act. See Hernandez v. City of San Jose, 897 F.3d 1125 (9th Cir. 2018); Kennedy v. City of Ridgefield, 439 F.3d 1055 (9th Cir. 2006). Plaintiff fails to address, let alone distinguish, these binding cases. (See Opposition at 10.)

they act too slowly? Regardless of whether the supervisors were present during the second race riot, when they did become aware of it? What would have alerted the supervisors to any specific danger to Plaintiff, as opposed to the dozens of other prisoners whose safety might be at risk? Are the supervisors at fault for failing to coordinate actions specifically to protect Plaintiff, or under Plaintiff's theory of liability, would they be equally responsible if any other prisoner had been injured? There is no way to tell the answers to any of these questions from the FAC.

There is an even more fundamental problem with how Plaintiff pleads the third cause of action: while the claim for "supervisory liability" clearly indicates it is based on 42 U.S.C. § 1983, it never alleges an underlying constitutional violation. (See FAC ¶¶ 55–58.) "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Id. The Court assumes that the third cause of action arises from the same alleged violation of the Fourteenth Amendment as the first, but it will not read into the FAC an allegation that does not exist; Plaintiff must address the issue in an amended complaint.

Because Plaintiff fails to allege with specificity what unconstitutional conduct the Doe supervisors engaged in, the Court DISMISSES the third cause of action WITH LEAVE TO AMEND.

**D.  Fourth Cause of Action: Monell – Failure to Train**

To begin, Plaintiff alleges both Monell claims against the Doe Defendants. (See FAC ¶¶ 59-79.) A Monell claim is, by definition, one brought against a public entity alone. See generally Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). The Court DISMISSES the Doe Defendants from the fourth cause of action WITHOUT LEAVE TO AMEND.

Plaintiff's fourth cause of action is based on a failure to train theory. (See FAC ¶¶ 59-67.) Defendant argues that Plaintiff's allegations are conclusory. (Motion at 11-12.) The Court agrees. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). To state a claim for failure to train under Monell, Plaintiff must establish "that (1) [he was] deprived of a constitutional right, (2) the County had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its [deputies] are likely to come into contact; and (3) [his] constitutional injury would have been avoided had the [County] properly trained those [deputies]." C.B. v. Moreno Valley Unified Sch. Dist., 544 F. Supp. 3d 973, 991 (C.D. Cal. 2021) (citing Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)). A county's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997). "[T]he

existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved … , is the 'moving force' behind the plaintiff's injury." Id. (citing Canton, 489 U.S. at 390–91).  "A county's failure adequately to train its employees to implement a facially valid policy can amount to deliberate indifference."  Long v. County of Los Angeles, 442 F.3d 1178, 1188 (9th Cir. 2006).  "Failure to train may amount to a policy of 'deliberate indifference,' if the need to train was obvious and the failure to do so made a violation of constitutional rights likely."  Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011).

      The FAC veers between conclusory allegations that merely parrot the legal standard and specific examples of training that do not apply to the instant case, likely because they were copied and pasted from other civil rights cases brought by Plaintiff's Counsel.  Plaintiff alleges that the County "knew that a second racial riot was imminent as a result of not moving the racially diverse inmates after the first riot.  Given the known limitations of the County jail, it was obvious that County jail detention staff, including the individual defendants[,] would need special training in order to seriously address threats of violence among detainees, and ensure that inmates were not housed with other racially diverse detainees following the first racial riot."  (FAC ¶ 60.)  Having alleged that the failure to train was thus "obvious," Plaintiff alleges that the County "had either actual or constructive knowledge" of the problems alleged, "condoned, tolerated and through actions and inactions thereby ratified such policies," which means that "Defendant also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the Constitutional rights of Plaintiff, and other similarly situated."  (Id. ¶ 63.)  Plaintiff proceeds to allege 15 areas of deficient training, most of them seemingly unrelated to the case at hand: "[f]ailing to adequately investigate the background, training and experience of correctional deputies and their propensity to support and facilitate violence," "[f]ailing to control the conduct of its deputies who have a known propensity of supporting and facilitating violence," and "[s]anctioning, condoning, and approving a correctional deputy-wide custom and practice of a code of silence, cover-up and dishonesty," to cite just a few.  (Id. ¶ 62.)  The problem with these allegations is not that there are too few of them, or even that they lack detail.  The problem is that they read like what an artificial intelligence tool[5] might come up with if prompted to allege training violations in a jail according to Twombly-Iqbal pleading standards; in other words, a result that appears facially sufficient provided one does not read very carefully.

      Plaintiff should begin by asking, and pleading, the answers to basic questions.  Did sheriff's deputies at the jail receive any training in preventing race riots?  If so, what did that training consist of?  Were they taught to look out for certain warning signs?  Were they taught that racial segregation in a custodial setting may only be permissible within a certain legal framework?  If the deputies did not receive any specific training on how to prevent race riots, did they receive training on related subjects?  Regardless, why was whatever training the deputies did receive inadequate?  What training would be appropriate to properly instruct jail staff on how to prevent race riots?  Moreover, why, *specifically*, was the County's failure to train "deliberately indifferent?"  Why did the County know, or should it have known, that its training in this area

---

[5] See, e.g., OpenAI, *ChatGPT*, https://chat.openai.com.

was inadequate?  When did the County have such notice and/or knowledge?  Why did the failure to train lead to Plaintiff's injury?  What would proper training have taught the deputies to do in order to protect Plaintiff and prevent the injuries he suffered?

The Court dismisses Plaintiff's fourth cause of action against the County WITH LEAVE TO AMEND.

### E.  Fifth Cause of Action: Monell – Unconstitutional Policy, Custom and Practice

As it did above, the Court DISMISSES the Doe Defendants from the fifth cause of action WITHOUT LEAVE TO AMEND.

Because Plaintiff's fifth cause of action largely rehashes the same allegations as the fourth, it fails for the same reasons.  (See FAC ¶¶ 68-79.)  A local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.  Under Monell, municipalities are subject to damages under Section 1983 in three situations: when the plaintiff was injured pursuant to (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority." See City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970)); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 481–83 (1986).  An "official policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." Polk County v. Dodson, 454 U.S. 312, 326 (1981) (citation omitted).

When plaintiffs seek municipal liability based on an unofficially adopted practice or custom, the practice or custom "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Monell, 463 U.S. at 691).  "Liability for improper custom may not be predicated on isolated or sporadic incidents." Id.  Instead, "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id.  "While there is no per se rule for the amount of unconstitutional incidents required to establish custom under Monell, 'one or two incidents ordinarily cannot establish a . . . custom, while more incidents may permit the inference of a [custom], taking into account their similarity, their timing, and subsequent actions by the municipality.'" Wettstein v. County of Riverside, 2020 WL 2199005, at *5 (C.D. Cal. Jan. 22, 2020) (quoting J.M. by & through Rodriguez v. County of Stanislaus, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018)).  "To state a claim for municipal liability for unconstitutional custom, policy or practice, [a plaintiff] must identify a specific policy or custom and then articulate—through their factual allegations—the basis for concluding the identified policy or custom represents 'official policy'."

M.S. v. City of Fontana, 2017 WL 10545379, at *6 (C.D. Cal. April 13, 2017) (citing Monell, 463 U.S. at 691).

The fifth cause of action engages in the same improper practice that the Court identified in the fourth claim: alternating between conclusory allegations and specific ones unrelated to the matter at hand. (See FAC ¶¶ 68-79.) The specific examples Plaintiff provides in the fifth cause of action are identical or lightly recycled versions of those asserted in the "failure to train" claim, alleging, for example, a failure to "adequately investigate the background, training and experience of correctional deputies and their propensity to support and facilitate violence[.]" (Id. ¶ 72.) The Opposition is no help to Plaintiff either. It is obvious, again, that Plaintiff's Counsel is merely copying and pasting material from other cases rather than substantively engaging with the County's arguments. He argues, for example, "LASD's COVID-19 customs, practices, and policies give rise to Monell Liability." (Opposition at 14.) To state a Monell claim for an unconstitutional policy, practice or custom, Plaintiff must provide specific allegations that actually relate to, and arise out of, the instant dispute. Plaintiff must also "allege some specific facts that would support the conclusion that the alleged policies exist." Luttrell v. Hart, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020); cf. Lapachet v. California Forensic Med. Grp., 313 F. Supp. 3d 1183, 1193 (E.D. Cal. 2018). What are the specific policies, practices or customs that matter for purposes of this case? What facts indicate that these actually exist? Why are they longstanding? How long have they been around? Why and how have they presented problems in other situations? Why are these policies, practices or customs deficient under the Constitution? Why are they the "moving force" behind Plaintiff's claims? These are fundamental questions the FAC does not answer.

The Court dismisses Plaintiff's fifth cause of action against the County WITH LEAVE TO AMEND.

**F. Sixth Cause of Action: Negligence**

Defendant argues that it is immune from suit for negligence pursuant to Cal. Gov. Code § 844.6. (Motion at 13-14.) Plaintiff either misunderstands, or deliberately evades, the issue in the Opposition by arguing that 1) he alleges the elements of a negligence claim and 2) government *employees* are not immune from suit. (See Opposition at 15-16.) The Court agrees with Defendant that the County is immune from a negligence action, as Cal. Gov. Code § 844.6 immunizes public entities for any injury to any prisoner. See Cal. Gov. Code § 844.6; Lucero v. County of Orange, 2021 WL 1034861, at *1 (C.D. Cal. Mar. 16, 2021);[6] Towery v. State of California, 14 Cal. App. 5th 226 (2017), as modified (Aug. 14, 2017). The narrow exception to that immunity under Cal. Gov. Code § 845.6 does not apply: Plaintiff does not allege that any

---

[6] Plaintiff appears to argue that the Court should not rely upon Lucero because it is an unpublished decision, a curious argument to make when he cites no less than five unpublished cases in the Opposition. (See Opposition at 17.) As Plaintiff likely knows, the Court relies upon unpublished federal district court decisions in many, if not most, of its orders. Lucero was correctly decided and is valid authority for the proposition addressed here.

Defendant was aware of a serious and obvious medical condition requiring immediate care and that he failed to summon immediate medical care. See Castaneda v. Dep't of Corr. & Rehab., 212 Cal. App. 4th 1051, 1070 (2013) (a public entity may be liable under Cal. Gov. Code § 845.6 when it fails to summon immediate medical care for a serious and obvious medical condition requiring immediate care).

Because amendment would be futile, Plaintiff's negligence cause of action against the County is DISMISSED WITHOUT LEAVE TO AMEND.[7]

### G. Seventh Cause of Action: Bane Act

Defendant argues that the County is also immune from Plaintiff's Bane Act cause of action pursuant to Cal. Gov. Code § 844.6. (Motion at 17.)  The Court rejects Plaintiff's argument that the County remains vicariously liable under Cal. Gov. Code § 815.2. (Opposition at 18.)  "Invoking vicarious liability under California Government Code § 815.2 to get around this immunity [in section 844.6] ordinarily fails with respect to prisoners, because although a public entity may be vicariously liable for the acts and omissions of its employees (Gov. Code, § 815.2), that rule does not apply in the case of injuries to prisoners." Stewart v. County of Los Angeles, 2019 WL 13244542, at *7 (C.D. Cal. Mar. 4, 2019) (quoting Lawson v. Superior Court, 180 Cal. App. 4th 1372, 1383 (2010); see also Luttrell, 2020 WL 5642613, at *7 ("Plaintiff's reliance on Section 815.2 in order to avoid the immunity provisions of Section 844.6 fails because[,] although a public entity may be vicariously liable for the acts and omissions of its employees (Cal. Gov't. Code § 815.2), that rule does not apply in the case of injuries to prisoners.") (internal quotation marks and citation omitted).  "Moreover, Plaintiff is unable to bring a Bane Act cause of action against the County based on the conduct of its employees.  Although the Bane Act permits vicarious liability, Section 844.6 affords the County immunity from Plaintiff's injuries." Luttrell, 2020 WL 5642613, at *7; see also Towery, 14 Cal. App. 5th at 234; Warren v. Cnty. of Riverside, 2019 WL 994021, at *5 (C.D. Cal. Jan. 4, 2019).  Because amendment would be futile, Plaintiff's Bane Act cause of action against the County is DISMISSED WITHOUT LEAVE TO AMEND.

Defendant also argues that the Doe Defendants should be dismissed from the Bane Act claim because Plaintiff "has not and cannot allege sufficient facts that satisfy the Bane Act's requirement of showing 'threat, intimidation or coercion' by any Defendants." (Motion at 16.)  While the Court need not reach the argument because it has already dismissed the Doe Defendants, it does so in the interests of clarity and judicial economy, should Defendant renew the argument in a future motion.  The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'"

---

[7] Defendant does not raise an argument for dismissal of the Doe Defendants related specifically to the negligence cause of action, and so the Court does not address any here.  (See Motion at 13-14; Reply at 6-7.)  Above, the Court dismissed the Doe Defendants from the negligence claim with leave to amend.  To avoid any ambiguity, Plaintiff is granted leave to amend a negligence cause of action against any individual defendants, including Doe Defendants; he must, of course, do so with the specificity required by the instant Order.

Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). The Bane Act requires "a showing of the defendant's specific intent to violate the plaintiff's constitutional rights." Rodriguez v. Cty. of Los Angeles, 891 F.3d 776, 802 (9th Cir. 2018) (citing Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1042-43 (9th Cir. 2018)). However, "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." Reese, 888 F.3d at 1045. "This specific intent inquiry centers on two questions: First, 'is the right at issue clearly delineated and plainly applicable under the circumstances of the case,' and second, 'did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?'" Luttrell, 2020 WL 5642613, at *5 (N.D. Cal. Sept. 22, 2020) (citations omitted). "Specific intent does not require a showing that a defendant knew he was acting unlawfully; reckless disregard of the 'right at issue' is all that is necessary." Id. (quoting Cornell v. City & Cnty. of San Francisco, 17 Cal. App. 5th 766, 804, (2017), as modified (Nov. 17, 2017) (brackets omitted). "[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." Reese, 888 F.3d at 1045 (citation omitted).

Plaintiff alleges that "Defendants showed a specific intent to violate [his] constitutional rights, through their reckless disregard for [his] constitutional rights." (FAC ¶ 88.) The Court has already explained at length how the FAC lacks the requisite specificity in what individual actors, including the Doe Defendants, allegedly did and why their acts violated the Constitution. As currently pled, the FAC lacks specific allegations that any individual "acted with the 'particular purpose' of depriving [Plaintiff]" of a constitutional right. Cornell, 17 Cal. App. 5th at 804. The Court agrees with Plaintiff that the federal district courts in California have yet to reach a clear consensus on the required showing of specific intent for a plaintiff alleging a violation of the Bane Act based on deliberate indifference to a prisoner's medical needs. (See Opposition at 17-18.) But whatever the precise standard is, Plaintiff has failed to meet it. If Plaintiff chooses to file an amended complaint to address the deficiencies outlined above, he must also make a stronger showing of specific intent involving one or more individual actors in order to state a claim for relief under the Bane Act.

## V. CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's Motion. The January 30, 2023 hearing is **VACATED**. The Court **DISMISSES** the Doe Defendants from the first, third, sixth and seventh causes of action **WITH LEAVE TO AMEND** and the Doe Defendants from the second, fourth and fifth causes of action **WITHOUT LEAVE TO AMEND**. The second cause of action is **DISMISSED WITHOUT LEAVE TO AMEND** against all Defendants. The County is **DISMISSED** from the fourth and fifth causes of action **WITH LEAVE TO AMEND**. The County is **DISMISSED** from the sixth and seventh causes of action **WITHOUT LEAVE TO AMEND**. An amended complaint, if any, shall be filed by February 13, 2023.

**IT IS SO ORDERED.**